IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JULIE LLOYD | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 3:23-cv-2292 |
| | § | |
| ATHENA CONDOMINIUM | § | |
| CO-OWNERS ASSOCIATION | § | |
| | § | |
| Defendant | § | |

## COMPLAINT

Julie Lloyd ("Ms. Lloyd") files this her Complaint against Athena Condominium Co-Owners Association as follows:

## PARTIES

1.      Ms. Lloyd is an individual residing in the Northern District of Texas.

2.      Athena Condominium Co-Owners Association (the "Association") is a Texas corporation. It may be served with process by serving its registered agent for service, FirstService Residential Texas, Inc. at its registered address, 14951 North Dallas Parkway, Suite 600, Dallas, Texas 75254.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 because the claims herein are based on the private cause of action granted in 42 U.S.C. §3613(a) and therefore arise under the laws of the United States.

4.      Venue is proper in this Division and District pursuant to 28 U.S.C. §1391(b)(2) because the events or omissions giving rise to the claims alleged in this Complaint occurred and are occurring in this District in Dallas, Dallas County, Texas.

## FACTS

5.      Ms. Lloyd is an individual with a "handicap" as defined in 42 U.S.C. §3602(h).[1] She owns a condominium at the Athena Condominiums (the "Condominiums"), located at 6335 West Northwest Highway, Dallas, Texas 75225.

6.      The Condominiums are managed by the Association, whose principal office is at the same address.

7.      Section 6.06 of the governing documents for the Condominiums prohibits any condominium owner from keeping a pet.

8.      In 2022 Ms. Lloyd, who owned more than one condominium at the Athena, sold one of her condominiums. The purchaser, who suffered from a disability, requested as an accommodation that she be permitted to keep her emotional support dog. This request was strongly opposed by the Association and many residents but was eventually granted. On information and belief, the Association thought Ms. Lloyd was somehow responsible because she sold the condominium to the new resident.

9.      In January of 2023 Ms. Lloyd acquired a dog to serve as a psychiatric service dog and emotional support dog. disability. At the same time her psychiatrist, Dr. Larry Shadid, wrote a letter explaining that the dog was a psychiatric service dog that provided assistance she needed because of her disability.

---

[1] Except where required for clarity, the word "disability" will be used in the balance of the Complaint because "handicap" is no longer considered appropriate.

10.     In early July 2023 Ms. Lloyd requested that the Association grant her an accommodation to keep the dog she had acquired as provided in 42 U.S.C. §3604(f)(3)(B). She provided the Association with Dr. Shadid's January 2023 letter.

11.     On July 14, 2023 the Association, acting through its attorney, Daniel B. Jones wrote to Ms. Lloyd that her doctor's letter was not sufficient to establish a disability and a disability related need for the dog.

12.     Ms. Lloyd then sent Mr. Jones a more detailed letter from Dr. Shadid dated July 27, 2023. This letter stated:

> Julie carries a diagnosis of Generalized Anxiety Disorder (ICD-10-CM CODE: F41.1) and Post-traumatic Stress Disorder (ICD-10-CM CODE: F43.10). She has been medicated for both conditions. Julie experiences high levels of stress which impose limitations on her quality of life and daily functioning.
>
> In order to allow her to be buffered from areas that are crowded, to interrupt disruptive behavior, and to decrease her anxiety, her service dog provides necessary calming assistance. Ms. Lloyd has had her service dog, Pommeroy, a Chihuahua, for the past seven months and has found a marked improvement in her condition. Her service dog has provided a safe and consistent support system. Julie's service dog has provided her constructive, soothing, stress management solution to help her keep calm and prevent possibilities of escalating stress that could further cause complications to her overall well-being. The service dog has been trained to recognize signs of an impending panic attack. Ms. Lloyd is able to live a normal life and continue to work without interruptions with the aid of her service dog.
>
> The accommodation of Ms. Lloyd's handicap may be necessary to afford her an equal opportunity to use the dwelling at Athena Condominiums. The presence of her service dog will be a reasonable accommodation.

13.     In response to this letter the Association, again acting through Mr. Jones, once again refused to grant the requested accommodation. In his response dated August 15, 2023 Mr. Jones stated that the Association did not believe Dr. Shadid's letter established that Ms. Lloyd suffers

from a disability. In this letter Mr. Jones "invites" Ms. Lloyd to provide additional medical records and though he states this is voluntary he makes it clear from the context that the accommodation would not be granted without such records.

14.     Dr. Shadid's letter clearly establishes that Ms. Lloyd suffers from a disability. The diagnostic criteria for both Generalized Anxiety Disorder and Post Traumatic Stress Disorder require a mental impairment that causes clinically significant distress or impairment in social, occupational or other important areas of functioning. These diagnostic criteria clearly parallel the definition of "handicap" in 42 U.S.C. §3602(h) as a mental or physical impairment that substantially limits one or more major life activities.

15.     Mr. Jones' response also asserted that Dr. Shadid's letter had failed to establish a disability related need for her dog. Dr. Shadid's letter clearly states that the presence of the dog provides "necessary calming assistance" so that Ms. Lloyd can "live a normal life."

16.     Finally, Mr. Jones response claims that Dr. Shadid's letter does not establish that the dog meets the definition of "service dog" as a dog with special training related to her disability despite Dr. Shadid's clear statement that the dog was trained to recognize symptoms of an impending panic attack.

17.     Ms. Lloyd met with the Board of Directors of the Association on August 24, 2023, hoping to persuade the Board to grant her requested accommodation. After that meeting Margaret Darden sent Ms. Lloyd an email in which she, on behalf of the Association, again questioned whether Ms. Lloyd suffered from a disability and had a related need for the dog. She also asked for additional medical records, making it clear that this was a requirement if the request for accommodation was to be granted.

18.     Ms. Lloyd responded to Ms. Darden's email point by point, explaining again that her anxiety and PTSD impaired her ability to work and that having the dog was necessary so she could "work and make a living." Despite this, the Board sent Ms. Lloyd a notice on September 14, 2023, that her accommodation request was denied and demanding the removal of her dog. This was followed by a letter from Mr. Jones threatening a lawsuit.

19.     Ms. Lloyd has learned that in the last month members of the Association Board have discussed her request and her disability with residents who are not involved in the management of the Association and have no need for confidential information about her disability. This has been done, on information and belief, with the specific intent that other residents will dislike and even shun Ms. Lloyd.

20.     Ms. Lloyd has retained the undersigned attorney to represent her and agreed to pay for his services based on a contingent fee contract.

## FIRST CLAIM FOR RELIEF
### (Entitlement to reasonable accommodation)

21.     Paragraphs 1-20 above are incorporated into this section by reference.

22.     The denial of Ms. Lloyd's request for accommodation under 42 U.S.C. §3604(f)(3)(B) is an unlawful act of the kind described in 42 U.S.C. §3604(f)(1) and (f)(2), and constitutes a discriminatory housing practice as defined in 42 U.S.C. §3602(f). Ms. Lloyd is therefore an aggrieved person as defined in 42 U.S.C. §3602(i). She is entitled to maintain this action pursuant to 42 U.S.C. §3613(a) and she is entitled to the relief permitted by 42 U.S.C. §3613(c), including but not limited to:

    a.  an award of damages,
    b.  injunctive relief to prevent future discrimination, and
    c.  the recovery of her attorneys' fees and costs of court.

## SECOND CLAIM FOR RELIEF
### (Unlawful intimidation and interference)

23.    Paragraphs 1-22 above are incorporated into this section by reference.

24.    The conduct of the Association described above violates the prohibition against intimidation and interference in 42 U.S.C. §3617 and is a discriminatory housing practice actionable under 42 U.S.C. §3613(a). Based on this violation Ms. Lloyd is entitled to recover the relief permitted by 42 U.S.C. §3613(c), including but not limited to:

    a.  an award of damages,

    b.  injunctive relief to prevent future discrimination, and

    c.  the recovery of their attorneys' fees and costs of court.

## PRAYER

Based on the foregoing, Ms. Lloyd requests that the Court:

•  Enter judgment in her favor against the Association for her actual damages caused by the Association's unlawful conduct,

•  Enjoin the Association and its officers, employees, agents, successors and all other persons in active concert or participation with them from enforcing the "no pets" policy against her,

•  Enjoin the Association and its officers, employees, agents, successors and all other persons in active concert or participation with them from harassing or intimidating Ms. Lloyd directly or indirectly specifically including any discussion of Ms. Lloyd's accommodation request with any person outside the Board of Directors of the Association and the Association's attorneys,

•  Enjoin the Association and its officers, employees, agents, successors and all other persons in active concert or participation with them from treating Ms. Lloyd in any manner that is different from the treatment of other owners and residents of the Condominiums, and in particular

from unequal enforcement of any of the governing documents, or the rules and policies of the Association or denial of access to any of the facilities or benefits available to residents of the Condominiums,

- Order that all members of the Association Board and all officers and employees of any management company employed by the Association undergo FHA training as a condition to serving on the Board or acting as a management company to the Association, such training to specifically include the obligations of an Association or property management company with respect accommodation requests under the Fair Housing Act.

- Award Ms. Lloyd her reasonable attorney fees and costs, pursuant to 42 U.S.C. § 3613(c)(2), and

- Grant such other and further relief as to which Ms. Lloyd may show herself justly entitled.

Dated October 18, 2023.

Richard M. Hunt
Texas State Bar No. 10288700
Email: rhunt@hunthuey.com
Jeanne M. Huey
Texas State Bar No. 24004636
Email: jhuey@hunthuey.com

HUNT HUEY PLLC
3010 Mountain Ash Court
Garland, Texas 75044
Telephone: (214) 641-9182
Facsimile: (214) 279-6124

ATTORNEYS FOR JULIE LLOYD